UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINA VANESSA CHAVARRO VELEZ,<br><br>                                    Petitioner,<br><br>v.<br><br>Warden, Otay Mesa Detention Center;<br>Field Office Director, San Diego Field<br>Office, United States Immigration and<br>Customs Enforcement; TROY MILLER,<br>Acting Director, United States<br>Immigration and Customs Enforcement;<br>KRISTI NOEM, Secretary of Homeland<br>Security; PAM BONDI, United States<br>Attorney General,<br><br>                                    Respondents. | Case No.: 3:26-cv-01889-JES-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; and**<br><br>**(2) DENYING AS MOOT THE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[ECF Nos. 1, 2]** |

Before the Court is Petitioner Lina Vanessa Chavarro Velez's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241; and Motion for Temporary Restraining Order ("TRO"). ECF Nos. 1, 2. Pursuant to the Court's Order to Show Cause, (ECF No. 3.), Respondents (the "Government") filed the Return. ECF No.

1

5, ("Ret."). Upon Petitioner's filing of the Traverse (ECF No. 7.), the Court took the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

On September 22, 2023, Petitioner, a Columbian national who was victimized sexually and extorted, fled her home country and lawfully entered the United States to seek asylum. ECF No. 1 ("Pet.") at 1. Petitioner underwent a credible fear interview in November 2023, receiving a positive determination and, immediately thereafter, was granted parole under Section 1182(d)(5)(A). Pet. at 1; Ret. at 2; *see* ECF 1-3 at 18-19, ("Parole Not.").

With the exception of a traffic violation committed in the State of Texas, that she is addressing through a payment plan, Petitioner alleges to have maintained a clean criminal record since entering the country. *Id*. at 2. Further, she contends to not be a flight risk and to have complied with the terms and conditions of her parole. *Id*.; ECF No 1-3 at 7; *see* Parole Not.

Despite this, when Petitioner was on Camp Pendleton Marine Base on March 12, 2026, she was approached and apprehended by armed personnel, under the pretext of verifying her nationality. Pet. at 2. Later that day, said military personnel turned over Petitioner to Respondents' custody. *Id*. at 6. Petitioner is currently being held at the Otay Mesa Detention Center, without the opportunity for a bond hearing or individualized custody determination. *Id*. ¶¶ 17, 19; *id*. at 9-10; Ret. at 2.

Petitioner seeks habeas relief on two grounds. First, she argues that Respondents have violated the INA by detaining her without affording her a prompt bond hearing. Pet. at 8-9. Second, she argues that her continued detention without an individualized custody determination violates the Due Process Clause of the Fifth Amendment. *Id*. at 9.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of

3:26-cv-01889-JES-MSB

that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    DISCUSSION

In response to the Petition, the Government: (1) confirms that Petitioner was previously released from immigration custody on parole, under 8 U.S.C. § 1182(d)(5)(A); (2) expresses its lack of information to assert whether Petitioner' parole was terminated in accordance with 8 C.F.R. § 212.5(e)(2); (3) maintains that Petitioner is subject to mandatory detention under § 1225(b)(2); but (4) does not oppose the Petition, deferring to the Court on the appropriate relief. Ret. at 2-3.

Such issues have been addressed by the undersigned in a prior decision, *Gergawi v. Larose*. No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *2-4 (S.D. Cal. Dec. 23, 2025). Therefore, the Court elects to follow the reasoning stated in *Gergawi* and incorporates it by reference. *Id*.

### A.    Jurisdiction

The Court has jurisdiction over this Petition as it finds that, here, the jurisdiction stripping provisions of Section 1252 do not apply. *Gergawi*, 2025 WL 3719321, at *2; *see also Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025); *see also Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025).

//

//

3:26-cv-01889-JES-MSB

## B.   Petitioner has a Constitutionally Protected Liberty Interest

It is undisputed that, after initially being detained in Fall 2023, the Government released Petitioner from custody on bond, pursuant to 8 U.S.C. § 1182(d)(5)(A). The Court finds that the Government's conduct—granting Petitioner parole—resulted in Petitioner's acquisition of a liberty interest in remaining out of immigration custody. *See Gergawi*, 2025 WL 3719321, at *3-4; *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

Courts have overwhelmingly held that the Government violates due process when it revokes a noncitizen's parole, granted under 8 U.S.C. § 1182(d)(5)(A), by re-detaining them without, first, making an individualized determination that either "the purpose for which [their] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [their] continued presence ... in the United States[.]" *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (quoting 8 C.F.R. § 212.5(e)(2)(i).); *see Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding due process violation for failure to comply with APA); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (finding due process violation and enjoining government "from re-arresting [petitioner] "unless and until a hearing, with adequate notice, is held in Immigration Court to determine whether his bond should be revoked or altered.").

Here, the Government does not claim that it complied with 8 C.F.R. § 212.5(e)(2), meaning that it conducted an individualized determination prior to re-detaining Petitioner. Ret. at 2; *see* 8 C.F.R. § 212.5(e)(2). However, based on the papers, it is unclear whether Petitioner's parole was active or expired at the time she was re-detained. Pet. ¶ 7; *see* Parole Not; *see generally* Ret. Thus, the Court cannot conclude, at this time, that the Government improperly terminated Petitioner's parole, violates her due process rights. *Mata Velasquez*, 794 F. Supp. 3d at 146.

//

//

4

**C.      Petitioner's Constitutionally Protected Liberty Interest did not Expire**

The Due Process Clause protects all individuals in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690.

Here, in November 2023, Petitioner received a positive credible fear determination and immediately thereafter was granted parole under Section 1182(d)(5)(A). Pet. at 8-9; Ret. at 2; *see* Parole Not. Over the following twenty-eight months, Petitioner worked in cleaning services to support herself and has complied with the terms of her Notice. ECF No 1-2 ¶ 9; *id.* ¶¶ 10-11; ECF No 1-3 at 7. The Court notes that the Return is silent as to whether Petitioner's parole was still in effect when she was recently re-detained or if it expired on November 29, 2024, as Petitioner's Interim Notice Authorizing Parole ("Notice") seemingly sets forth. *See generally* Ret.; *see* Parole Not.

Petitioner was given an Interim Notice Authorizing Parole ("Notice") authorizing parole which stated: "You have been released pending a final decision in your exclusion/deportation hearing." Parole Not. at 19. The Notice also stated that Petitioner's parole was "valid for one year beginning from the date on this notice," (*i.e.*, November 29, 2023, and was set to "automatically terminate upon [her] departure or removal from the United States or at the end of the one year period" unless otherwise extended. *Id.* at 18. Her parole was "conditioned on [her] compl[iance] with the terms and conditions of [her] release," including reporting for "every scheduled hearing before the immigration court and every appointment as directed by ICE." *Id.*

A case from the Eastern District of California, *Omer G.G. v. Kaiser,* where the court found that a "petitioner's liberty interest did not expire along with his parole[,]" is instructive. --- F.Supp. 3d. ----, 2025 WL 3254999, at *5 (E.D. Cal. 2025).

There, petitioner was also released on parole, pursuant to 8 U.S.C. § 1182(d)(5)(A), and received an interim notice authorizing his parole with similar, if not the identical, language as Petitioner's. *Omer G.G.*, 2025 WL 3254999, at *1. That court found that:

> [u]nder the circumstances of this case, where immigration officials provided to petitioner a document stating that he was released "pending a final decision" in his removal proceedings, petitioner had not even had his initial hearing in those removal proceedings, and petitioner was granted a five-year work authorization permit during his year on parole status, petitioner reasonably maintained a liberty interest in his release pending a final removal decision in his immigration case. This conclusion is bolstered by the fact that the applicable regulations provide that if a non-citizen is re-detained after parole expires, they "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time ...." 8 C.F.R. §[§] 212.5(e)(1), (e)(2)(i). Here, not only is there is no removal order against petitioner, but petitioner had also not even had an initial hearing in his removal proceedings when agents re-detained him.

*Id*. at *6 (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (finding the government's argument unpersuasive that a noncitizen did not have a liberty interest where his one-year parole had expired shortly before he was re-detained); *Rodriguez Cabrera v. Mattos*, 800 F. Supp. 3d 1130, 1137 (D. Nev. 2025) (finding that the government's "argument does not explain why [Respondents] found Petitioner to be eligible for parole on February 7, 2024, but not the following year even after he had established deep ties to the community ... and timely filed an asylum application[,]" holding that petitioner's liberty interest "did not expire along with Petitioner's parole agreement."); *Maklad v. Murray*, No. 1:25-cv-0946 JLT SAB, 2025 WL 2299376, at *2, 5-8 (E.D. Cal. Aug. 8, 2025) (reaching same conclusion in similar circumstances).

Petitioner's circumstances are analogous to OMER G. G. They both received the same Notice and, at the time their petitions were filed, neither had yet had their initial

3:26-cv-01889-JES-MSB

hearing. *See* 2025 WL 3254999, at *1; *see* ECF No. 1-3 at 2-3. OMER G. G.'s Master Hearing is scheduled for July 17, 2026, and Petitioner's Master Hearing was scheduled for March 24, 2026. ECF No. 1-3 at 2-3. Although the Petitioner's Notice states that it is not valid for work authorization, noncitizens granted parole under Section 1182(d)(5)(A) are eligible to apply for work authorization. *See* 8 C.F.R. § 274a.12(c)(11). The Court can reasonably infer that since Petitioner alleges to have worked in cleaning services, she likely was granted work authorization, like OMER G. G.

On these facts, the Court agrees with the well-reasoned decisions of its sister courts cited above that "petitioner's liberty interest did not expire along with his parole." *Omer G.G*, 2025 WL 3254999* at *5.

Petitioner claims that since being detained, she has yet to receive notice of the basis for which her parole was revoked or a custody redetermination hearing before an immigration judge. Pet. ¶ 19. The Government's Return does not contest these assertions. *See generally* Ret. The Court, therefore, finds that the Government failed to provide Petitioner with notice and an opportunity to be heard prior to revoking her parole, when she was re-detained. *Id*.; *see Gergawi*, 2025 WL 3719321, at *3-4; *see also Pinchi*, 792 F. Supp. 3d at 1032. In doing so, Respondents violated Petitioner's due process rights. *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025); *Leiva Flores v. Albarran*, No. 25-cv-09302-AMO, 2025 WL 3228306, at *5; *Faizyan v. Casey*, No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025).

While Petitioner's circumstances are analogous to Omer G.G's, they are also distinguishable. In *Omer G.G*, Respondents asserted that petitioner missed eight virtual check-ins. 2025 WL 3254999* at *2. In response Petitioner maintained that he completed all his check-ins, but on two occasions, he checked in late. *Id*. In light of these facts, the court found that a post-deprivation bond hearing, and not immediate release, was appropriate. *Id*. at 8

//

Conversely, here, Petitioner maintains—and the Government does not contest—that she has fully complied with the terms of her Notice. ECF No 1-2 ¶ 9. "[Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she 'failed to live up to the conditions of her release.'" *Pinchi*, 792 F. Supp. 3d at 1034-35 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The Court finds that Petitioner lived up to the conditions of her release, thus, making release, not a bond hearing, Petitioner's appropriate remedy. Accordingly, the Court will order Petitioner's immediate release.

## IV.   CONCLUSION

For the reasons discussed above:

(1) The Court **GRANTS** Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2241;

(2) Because the Court **GRANTS** the Petition and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **IMMEDIATELY** release Petitioner from custody, subject to any conditions of her preexisting parole;

(3) In light of the ruling on the Petition, the Court **DENIES AS MOOT** the Motion for Temporary Restraining Order;

(4) Respondents are **ORDERED** to file a Status Report on or before **April 15, 2026**, confirming that Petitioner has been released; and

(5) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: April 10, 2026

Honorable James E. Simmons Jr.
United States District Judge

8

3:26-cv-01889-JES-MSB